Magistrate Judge James P. Donohue

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED
```

OCT 1 4 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. MJ11-499 |
| Plaintiff, | |
| v. | COMPLAINT for VIOLATION |
| HECTOR HUERTA, OCTAVIO HUERTA CRUZ, and JASON RYAN HUERTA, | 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 |
| Defendants. | |

BEFORE United States Magistrate Judge P. Donohue, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
### (Conspiracy to Distribute Methamphetamine)

Beginning at a time unknown, but within the last five years, and continuing until on or about October 7, 2011, in King County, within the Western District of Washington, and elsewhere, HECTOR HUERTA, OCTAVIO HUERTA CRUZ, and JASON RYAN HUERTA, and other persons unknown, knowingly and intentionally did conspire to distribute methamphetamine, a substance controlled under Schedule II, Title 21, United States Code, Section 812.

It is further alleged that this offense involved fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine.

All in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B),

Affidavit of Michael Jacobi- 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

and 846.

## COUNT 2
### (Distribution of Methamphetamine)

On or about April 5, 2011, in King County, within the Western District of Washington, HECTOR HUERTA and OCTAVIO HUERTA knowingly and intentionally did distribute, and aid and abet the distribution of, methamphetamine, a substance controlled under Schedule II, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 3
### (Distribution of Methamphetamine)

On or about October 7, 2011, in King County, within the Western District of Washington, HECTOR HUERTA and JASON RYAN HUERTA knowingly and intentionally did distribute, and aid and abet the distribution of, methamphetamine, a substance controlled under Schedule II, Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

**And the Complainant, Michael Jacobi, states that this Complaint is based on the following information:**

### AFFIANT'S BACKGROUND

1.      I am employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Seattle Field Office Violent Gangs Task Force (VGTF). I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program and the ATF National Academy. During this training, I received instruction relating to the investigation of firearm and drug related violations. Prior to joining ATF, I was a Border Patrol Agent and am a graduate from the U.S. Border Patrol Academy. During my career as a Patrol Agent and as a Special Agent, I have had training and experience with cases involving the smuggling of people,

Affidavit of Michael Jacobi- 2

1  monetary assets, animals, narcotics, and firearms.  I have been involved in numerous

2  investigations involving the unlawful purchase and/or unlawful possession of firearms

3  and the illegal use of firearms during crimes of violence and/or drug trafficking.

4      2.    The statements contained in this affidavit are based on my own

5  investigation, my training and experience as a law enforcement agent, as well as

6  information provided to me by and/or through other law enforcement agents,

7  investigators, and individuals with knowledge of this matter, during the course of my

8  investigation, and through my review of documents.  This affidavit summarizes such

9  information but does not provide each and every detail known by your affiant regarding

10  this investigation; rather it provides information necessary to establish probable cause for

11  the arrests of Hector HUERTA, Octavio HUERTA, and Jason Ryan HUERTA.

12                              **CONFIDENTIAL INFORMANT**

13      3.    As outlined below, a confidential informant, CI-31, was utilized for the

14  controlled purchases of firearms and methamphetamine in this investigation.  CI-31

15  currently has no criminal convictions.  He/She has pending state charges and has

16  cooperated with law enforcement with the expectation that if he/she assists in an

17  investigation which results in federal arrests, the State will dismiss his pending charges.

18  The charges currently pending against CI-31 include Burglary in the Second Degree,

19  Theft in the First Degree, and Theft of a Motor Vehicle.  These charges have already been

20  filed.  Moreover, after the first couple of controlled purchases, I have paid the CI

21  approximately $100 for each successful controlled purchase.  The CI has cooperated with

22  another law enforcement agency and has also worked with me on another case.  To my

23  knowledge, the CI has never given me false information, and the information he/she has

24  provided to me has generally proved to be true, some examples of which are outlined

25  herein.  For each of the controlled purchases below, the CI was searched prior to the

26  purchases for any contraband or concerning items and was found not to be in possession

27  of any such items.

28

Affidavit of Michael Jacobi- 3

## INVESTIGATION & PROBABLE CAUSE

### April 5, 2011: Sale of Methamphetamine and Firearm

4.      On April 4, 2011, CI-31 contacted the affiant and stated that he/she was contacted by a Hispanic male known to him/her as 'EL MICHOACONO', later identified as HECTOR HUERTA. For ease of reading, I will identify each defendant by their first name. HECTOR told the CI he had an AK-47 rifle for sale. The CI stated that HECTOR works with his two sons; however, he/she does not know any of their names. The CI told the affiant HECTOR drives a gray Range Rover bearing Washington registration AAN2530.

5.      On April 5, 2011, I learned from the Department of Licensing that the above vehicle is registered to OCTAVIO HUERTA CRUZ with a listed address of 1427 S. Henderson St. Apt 4B, Seattle, Washington 98108. The CI stated this was the address is HECTOR's home. The CI further confirmed the photo on the driver's licence for OCTAVIO as being a picture of one of HECTOR's sons.

6.      On the same date, CI-31 arranged the purchase of one SKS type rifle and a half ounce of methamphetamine from HECTOR, and his two sons, OCTAVIO and JASON RYAN HUERTA. The controlled purchase of said items was covered by the ATF Violent Gang Task Force (VGTF) and took place at 28411 59th Ave S., Auburn, Washington.

7.      The above location is farmland rented by the targets. I believe this to be true because HECTOR told CI-31 that his family rents the farmland. This property is situated in a rural area and is considerably isolated. It is a significant distance from paved roads and has only one access route.

8.      Prior to the controlled purchase CI-31 met the VGTF at a staging location to be briefed, and equipped with an audio transmitter, an audio/video recording device, and ATF buy money. The CI was followed toward the entrance of 59th Ave. S., Auburn, Washington. Moments later surveillance units heard the CI greeted by a male and the sound of roosters in the background via wire. All communication between the CI and the

Affidavit of Michael Jacobi- 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    targets was in Spanish.

2         9.    Subsequent to the deal the CI was followed to a debriefing location where

3    the CI turned over the purchased rifle and suspected methamphetamine.  The CI then

4    stated the following, in sum, to the affiant:  After arriving at his farmland the target

5    known to him/her as HECTOR spoke about chicken fights, some of which take place at

6    his farm.  HECTOR invited the CI to an upcoming chicken fight and told the CI he would

7    sell him/her a chicken to fight for $250.00.  The SKS rifle was removed from a green

8    Jeep Cherokee with an Idaho license plate and handed to the CI by OCTAVIO.  The CI

9    then gave HECTOR $500.00 for the rifle.  OCTAVIO then showed the CI a .22 caliber

10   rifle that he also wanted to sell.  OCTAVIO then fired several rounds from the .22 caliber

11   rifle into the trees.  HECTOR stated that his methamphetamine supplier was on the way.

12   HECTOR told his son OCTAVIO to go meet the supplier because he does not want him

13   to know the location of their property.  HECTOR stated that he can get pistols fast and

14   cheap.  HECTOR stated that he has 12 pounds of marijuana for sale for "12 (hundred

15   dollars) a pound" and stated that it is grown locally in the mountains.  HECTOR stated his

16   nephew in Mexico has large amounts of cocaine and crystal methamphetamine but that he

17   does not have customers to whom he could sell that type of quantity.  When HECTOR's

18   son OCTAVIO returned, he handed the CI the methamphetamine in exchange for

19   $500.00.  Before the CI left, HECTOR stated that he would call the CI the following day

20   with more guns to sell.

21        10.    Following the debrief, I transported the evidence to ATF for processing.

22   The rifle ATF CI-31 purchased was a Norinco, model SKS, 7.62 caliber rifle bearing

23   serial number 1703976.  This rifle was referenced in NCIC and did not have a record.

24   The suspected methamphetamine purchased by the CI field tested positive for

25   methamphetamine and weighed 15.0 grams with packaging.

26                       **May 2, 2011: Sale of Three Firearms**

27        11.    On April 6, 2011, CI-31 told the affiant that HECTOR had called him and

28   stated that he had two 9 mm pistols, a .22 caliber rifle, and a .22 caliber revolver to sell.

Affidavit of Michael Jacobi- 5

1       12.    On April 31, 2011, ATF CI-31 was contacted by HECTOR who informed

2 the CI that he has guns to sell.  HECTOR told CI-31 that he had a rifle, a revolver, and a

3 pistol he wanted to sell.  CI-31 arranged a meeting with HECTOR to take place on

4 Monday, May 2, 2011 for the CI to purchase the three firearms.  HECTOR told the CI

5 that it would be $800 for the three guns.

6       13.    On the morning of May 2, 2011, CI-31 spoke to HECTOR several times

7 concerning the meeting scheduled for later that afternoon; it was set to take place again at

8 28411 59th Ave S., Auburn, Washington.  On this same date, CI-31 met members of the

9 VGTF at a staging location prior to the meeting with HECTOR to be briefed and

10 equipped with an audio transmitter, an audio/video recording device, and ATF buy

11 money.

12       14.    The CI was then followed toward the meet location.  The recording of the

13 meet was translated by a Spanish interpreter.  Based on the interpretation, I believe

14 HECTOR engaged in a conversation regarding chicken fights.  HECTOR told the CI that

15 the day before he hosted a chicken fight on the property he rents.  HECTOR showed the

16 CI some of his fighting birds and some bags containing dead chickens that were killed in

17 fights the previous day.  HECTOR  expressed to the CI how good his fighting birds are;

18 he picked up one rooster and lifted its feathers to show a cut that it had recently sustained

19 and HECTOR told the CI that it was the only one of his fighters that got cut but it was

20 fine because it killed the other bird.  HECTOR told the CI that he can come to the next

21 chicken fight at his place in three weeks; it costs $20 to come and watch and $50 to enter

22 birds into the fights.  HECTOR also stated that he had kilograms of cocaine for sale at

23 $26,000 per kilogram.  HECTOR asked the CI if he/she wanted to buy some

24 methamphetamine and he pulled an ounce or half ounce baggie of methamphetamine out

25 from his pocket.

26       15.    HECTOR showed the CI the guns and then stated that the price was $1,000

27 for all three.  The CI stated that he was previously told $800.  HECTOR again stated that

28 he was charging $1,000 for the guns.  The CI paid HECTOR who told him that he will

Affidavit of Michael Jacobi- 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  have AK rifles to sell him the following day and grenades in 15 days.

2        16.    Five minutes after departing HECTOR's farm, the CI received a phone call

3  from HECTOR who stated that he just got notice from a supplier that he had a .45 caliber

4  pistol and that it will be at his farm in 10 minutes if he wanted to come back and buy it.

5        17.    Subsequent to the controlled purchase of the firearms the CI was followed

6  after departing the target's property to a debriefing location where the CI turned over the

7  purchased firearms, which were: a Remington Model 522, .22lr caliber rifle bearing serial

8  number 3099300; a Ruger Model P95, 9mm caliber pistol bearing serial number

9  316-60547, and a Gerstenberger & Eberwein Model 220, 22 caliber revolver bearing

10  serial number 4969.  All three firearms were referenced in NCIC and the Ruger Model

11  P95, 9mm caliber pistol bearing serial number 316-60547 was reported stolen.  The other

12  two firearms were not.

13                    **June 9, 2011: Sale of Three Firearms**

14        18.    On June 8, 2011, ATF CI-31 was informed by HECTOR that he had guns

15  and methamphetamine for sale.  HECTOR told CI-31 that he had a .40 caliber pistol and

16  two shotguns for sale, a 12 gauge and a 20 gauge.  The CI stated that he/she was

17  interested in the guns and offered to meet the following day to purchase them.

18        19.    On June 9, 2011, CI-31 received several phone calls from HECTOR, who

19  wanted to know what time the CI wanted to meet in order to purchase the guns.  The

20  meeting was arranged to take place that same after noon at HECTOR's property located

21  at 28411 59th Ave S., Auburn, Washington.  When asked how much he wanted for the

22  guns, HECTOR told the CI that he wanted $1,300.00 for the pistol and two shotguns.

23        20.    On this same date, CI-31 met members of the VGTF at a staging location

24  prior to the meeting with HECTOR to be briefed and equipped with an audio transmitter,

25  and ATF buy money.

26        21.    The CI was followed from the staging area to towards the meet location.

27  All communication between the CI and HECTOR, and his two sons was in Spanish.

28        22.    Surveillance units heard CI-31 counting out $1,300.00 in Spanish via wire

Affidavit of Michael Jacobi- 7

1   as he/she exchanged the money for the three guns with HECTOR.

2   23.    Subsequent to the controlled purchase of the firearms the CI was followed

3   to a debriefing location where the CI turned over the purchased firearms.  The CI stated

4   the following information during the debrief:  There are several hundred chickens on

5   HECTOR's property but they belong to several different people.  HECTOR still has

6   several pounds of marijuana that he wants to sell and would trade a couple pounds for a

7   pick-up truck.  HUERTA then talked about getting methamphetamine for the CI.

8   Following the debrief, I transported the evidence to ATF for processing.  CI-31 purchased

9   the following firearms: a Beretta Model 96, .40 caliber pistol bearing serial number

10  BER308340, a Remington Model 870, 12 gauge shotgun bearing serial number

11  I450584M, and Remington Model 870, and a 20 gauge shotgun, bearing serial number

12  B084948U.  All three firearms were referenced in NCIC and the Beretta Model 96, .40

13  caliber pistol bearing serial number BER308340 was reported stolen.  The other two

14  firearms were not.

15          **October 7, 2011: Sale of Methamphetamine and Two Firearms**

16  24.    On August 1, 2011, CI-31 spoke with HECTOR via telephone.  During the

17  conversation, HECTOR stated that he would be ready to sell the CI three ounces of

18  methamphetamine, at $1000.00 per ounce.

19  25.    On August 2, 2011, CI-31 received several phone calls from HECTOR in

20  which HECTOR told the CI not to let him down, and to come through with the money

21  because he had the methamphetamine ready.  CI-31 received another phone call where

22  HECTOR instructed him/her to come to his residence located at 1427 S. Henderson

23  Street, Apt. 4B, Seattle, WA 98108 where he would be ready to sell him/her the

24  methamphetamine.  After meeting at the staging location CI-31 was briefed and outfitted

25  with an audio transmitter and a digital audio/video recording device along with

26  pre-recorded buy money.  When escorting the CI to the meet location I observed several

27  males standing outside the apartment complex when driving by, one of whom I

28  recognized as HECTOR.  After exiting his vehicle CI-31 was immediately heard being

Affidavit of Michael Jacobi- 8

1  greeted via wire transmitter. All communication between the CI and HECTOR and his
2  family was in Spanish.
3      26.    Subsequent to the CI's departure from HECTOR's, the CI was followed to a
4  debriefing location and where he/she stated the following to the affiant: Just after the CI
5  arrived, HECTOR stated that he saw a vehicle that he thought was a unmarked police
6  vehicle and it really concerned him. HECTOR told the CI that his son had to go by the
7  Juan Colorado Restaurant to pick up the methamphetamine. JASON departed in a
8  Chevrolet Cavalier to go get the methamphetamine. When JASON returned he and
9  HECTOR went into a bedroom, where the CI could hear them speaking about a vehicle.
10 The CI believed this to be the suspected unmarked police vehicle. Moments after the two
11 men came out of the bedroom, HECTOR told the CI that he couldn't do the deal at that
12 time because his supplier was not available.
13     27.    On October 6, 2011, ATF CI-31 was in contact with HECTOR who stated
14 that he had two shotguns and methamphetamine to sell. The affiant directed ATF CI-31
15 to order two ounces of methamphetamine and the two shotguns. HECTOR informed
16 CI-31 the shotguns were $300 each and that the methamphetamine was $1,000 an ounce.
17 HECTOR told the CI to come to his farm property located at 28411 59th Ave S., Auburn,
18 Washington the next morning.
19     28.    On October 7, 2011, CI-31 met with the affiant and members of the VGTF
20 at a staging location prior to meeting with HECTOR. The CI placed a recorded phone
21 call to HECTOR at (208) 412-9086 to confirm that he was ready to meet. The CI was
22 briefed and then the CI and his/her vehicle were searched for firearms, narcotics, and
23 other contraband, none were found. The CI was then equipped with an audio transmitter,
24 and ATF buy money.
25     29.    The CI was followed from the staging area to the turn off road leading to
26 the target's farm property. When the CI arrived at the target's location surveillance units
27 could hear roosters via the wire and the CI was heard greeting individuals in Spanish. All
28 communication between the CI and HECTOR and JASON was in Spanish.

Affidavit of Michael Jacobi- 9

30. Surveillance units heard CI-31 and a person they believed to be JASON, based on past opportunities to hear JASON speak on a wired conversation, counting out money in Spanish.

31. Subsequent to the controlled purchase of the firearms and methamphetamine, the CI was followed after departing HECTOR's property to a debriefing location. At this location the CI turned over the purchased firearms, narcotics, and excess ATF buy money. The CI and his/her vehicle were searched again for firearms, narcotics, other contraband, and ATF buy money, none were found. The CI stated the following information during the debrief: The CI did not see HECTOR or his son JASON when entering their property until he/she observed them both coming out from behind trees as they were lowering the shotguns from an aimed position. HECTOR told the CI that he was nervous because he didn't recognize the CI's vehicle as it was different from the ones the CI had driven to the property previously.

32. HECTOR came to the CI's vehicle and unloaded three rounds from a Mossberg 12 gauge pump shotgun by manually removing them by hand, and put it into the CI's trunk. Then JASON approached the CI's vehicle and unloaded three rounds from a Marlin 12 gauge bolt action shotgun, manually by removing them by hand, and also placed it into the trunk of the CI's vehicle. The CI then handed HECTOR $600.00 for the two shotguns. JASON then handed the CI two plastic baggies each containing an ounce of methamphetamine. The CI then handed JASON $2,000. HECGTOR informed the CI that there will be chicken fights on November 24th on his property. HECTOR offered to trade the CI two more ounces of methamphetamine for the CI's vehicle.

33. Following the debrief, SA Cooper transported the evidence to ATF for processing. CI-31 purchased the following firearms: a Mossberg Model 500AG, 12 gauge shotgun, bearing serial number J279942, a Marlin Model 55, 12 gauge shotgun bearing serial number 28778884. CI-31 also purchased two ounces of methamphetamine. The methamphetamine weighed 57.1 grams in packaging and field tested positive. Both firearms were referenced in NCIC and neither of them had been reported stolen.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**CONCLUSION**

34.    Based on the aforementioned facts, I believe that HECTOR HUERTA, OCTAVIO HUERTA, and JASON RYAN HUERTA committed the crimes of Conspiracy to Distribute Methamphetamine and Distribution of Methamphetamine, in violation of Title 21, United States Code, Section 841(a) and 846.

MICHAEL JACOBI
SPECIAL AGENT
ATF

SUBSCRIBED and SWORN to before me this ___14th___ day of __October__ 2011.

THE HONORABLE JAMES P. DONOHUE.
United States Magistrate Judge

Affidavit of Michael Jacobi- 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970